## West Chicago St. R. R. Co. v. Mary E. Wheeler.

VERDICTS—*Excessive Damages—Remittitur—Duty of Trial Judge.*—It is the duty of the trial judge if he deems a verdict excessive either to insist upon a remittitur of the excess or if the verdict is so far excessive as to indicate that it is the result of such passion and prejudice on the part of the jury as should discredit the whole verdict, than to set it aside and grant a new trial.

**Trespass on the case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed February 14, 1898.

ALEXANDER SULLIVAN, attorney for appellant. EDWARD J. McARDLE, of counsel.

A. B. CHILCOAT, THEODORE CASE and W. P. BLACK, attorneys for appellee.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.

Appellee brought suit to recover damages for personal injuries claimed to have resulted from negligence of appellant. Upon trial a verdict was rendered for $20,000, upon which judgment was entered. The trial judge certifies a record to us which discloses that in overruling the motion for a new trial he said: "I think the verdict is excessive, but I do not think that I ought to interfere with what the jury did. I think I interfered less in the trial of this case than in any case that was ever tried before me. The Appellate Court has arrogated to itself the right to interfere with verdicts and to rectify them. I will let the verdict go to that court."

Considering only the testimony of appellee and her physician, it appears that her injuries were as follows: Appellee testified:    "When I reached home I was helped in the house and had to be undressed and put to bed; I remained in bed about five weeks without getting up; I experienced excruciating pains in the small of my back and in my head at this time, and the pain extends up my back and down the right side. I stayed in bed, in consequence of those injuries, five weeks at the time, and then I was able to be up a part of the day, and then have to go back to bed again. I was not able to be around the full day for months. Since July, 1894, I have been in bed part of the time, not able to do any work at all without suffering a great deal of pain; those pains which I suffer from are in my back and in my right side, in the abdomen—the right ovary; I never had any trouble with my ovary prior to this accident; my health was very good before this accident; my afflictions since this accident have effected me so that I can not get around without suffering a great deal of pain both in my ovary and in my back, and·if I am on my feet at all I limp, and I have to go to bed after being up part of the day—have to go to bed and stay there sometimes two or three days at a time, and it has affected my nerves so that I am very melancholy; my menstruation is very irregular; before that it had been very regular."

Her physician testified:    "There seems to be a hyperaemia, what we call congestion or inflammation, a chronic inflammation of that right ovary.    That condition can probably be cured in a great many years, and it may lead to final degeneration of the ovaries, cystic degeneration, which may require its removal.    The removal of the ovary is apt to induce sterility."    Upon cross-examination this witness stated that he had, about two months after the injuries to appellee, signed a statement, which is in part as follows:

"CHICAGO, June 11, 1894.

"In the case of Mary E. Wheeler, injured on April 9, 1894, we are satisfied that she is fully recovered. Patient is able to be about and attend to her ordinary duties as usual. Doctor Shoch has discharged the case from any further treatment."

From this evidence we think it clear that the verdict is excessive, and were we not led to this conclusion by the evidence, as we read it, we certainly would be led to the same conclusion by the certificate of the trial judge, who saw the appellee and the witnesses, upon the trial, and was therefore better able than any court of review to measure the evidence upon this issue. It was the duty of the trial judge, if he deemed the verdict excessive, either to insist upon a remittitur of excess, or, if the verdict was so far excessive as to indicate such passion or prejudice on the part of the jury as should discredit the whole verdict, then to grant a new trial.

Doubtless this court may, in proper cases, require a remittitur to cure an excessive verdict (Sec. 82, Practice Act). But in a case where the verdict seems so largely excessive, and where we are informed by the record merely that the trial judge so viewed it, without any suggestion as to how much it was, in his judgment, in excess of what the evidence would warrant, we decline to attempt a discharge of his duty in correcting such verdict by requiring a remittitur.

The judgment is reversed and the cause remanded.